UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
ADEEBA YAHYA HIZAM NAGI and FAHD ABDO                                    :
SALEH AL HARBI,                                                          :
                                                                        :
                             Petitioners,                               :
                                                                        :
             -v-                                                        :          25 Civ. 2453 (JPC)
                                                                        :
MARCO RUBIO, *in his official capacity as Secretary of*                 :          OPINION AND ORDER
*State*, and MORA NAMDAR, *in her official capacity as*                  :
*Assistant Secretary for Consular Affairs*,                             :
                                                                        :
                             Respondents.                               :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiffs-Petitioners Adeeba Yahya Hizam Nagi ("Nagi") and Fahd Abdo Saleh Al Harbi

("Al Harbi") (together, "Petitioners") bring this action under the Mandamus Act, 28 U.S.C. § 1361,

and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, against Defendants-

Respondents Marco Rubio, in his official capacity as Secretary of the U.S. Department of State,

and Mora Namdar, in her official capacity as Assistant Secretary of State for Consular Affairs

(together, "Respondents").[1]  Petitioners claim that Respondents have unlawfully withheld and

unreasonably delayed decision on Al Harbi's immigrant visa application and thus seek to compel

Respondents to adjudicate the application.  But since this case was brought, Respondents have

adjudicated Al Harbi's application, rendering the case moot.  So the Court grants Respondents'

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Assistant Secretary Namdar was automatically substituted as a Defendant for Rena Bitter, the former Assistant Secretary of State for Consular Affairs, as of December 22, 2025.  *See* https://www.state.gov/biographies/mora-namdar (last visited June 25, 2026).  Therefore, the Clerk of Court is respectfully directed to substitute Mora Namdar for Rena Bitter in the caption of this case.

motion to dismiss without prejudice for lack of subject matter jurisdiction.

## I. Background[2]

### A.    Statutory and Regulatory Framework

Congress allows noncitizens living abroad who want to enter and permanently reside in the United States to obtain immigrant visas. *See* 8 U.S.C. § 1101(a)(3), (15)-(16) (defining an immigrant as an "alien," *i.e.*, a "person not a citizen or national of the United States," and further defining an "immigrant visa" as "an immigrant visa required by this chapter and properly issued by a consular officer at his office outside of the United States to an eligible immigrant under the provisions of this chapter"). One type of immigrant visa is the family-based visa, granted to certain relatives of United States citizens and lawful permanent residents, including spouses. *See id.* §§ 1151(b)(2)(A)(i), 1153(a), 1154(a).

To start the family-based visa process for the noncitizen, the "citizen-relative must first file a petition," known as a Form I-130 Petition, "with U.S. Citizenship and Immigration Services (USCIS), an agency housed within the Department of Homeland Security, to have the noncitizen classified as an immediate relative." *Dep't of State v. Muñoz*, 602 U.S. 899, 904 (2024) (citing 8 U.S.C. §§ 1151(b)(2)(A)(i); 1154(a)(1)(A)); *see Drax v. Reno*, 338 F.3d 98, 114 (2d Cir. 2003) (explaining the "I-130 petition"). "If USCIS approves the petition, then the noncitizen may apply for a visa," *Muñoz*, 602 U.S. at 904 (citing 8 U.S.C. §§ 1201(a), 1202(a)), through what is known as a "Form DS-260, Electronic Application for Immigrant Visa and Alien Registration," 22 C.F.R.

---

[2] The following facts are drawn from the operative Petition, Dkt. 8 ("Petition"), along with the declaration of Rachel Ann Peterson, attorney adviser in the U.S. Department of State's Office of the Assistant Legal Adviser for Consular Affairs, Dkt. 24 ("Peterson Decl."). *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016) (explaining that in resolving a "fact-based Rule 12(b)(1) motion," a court may consider both "the allegations in the Pleading" and "evidence beyond the Pleading" without "need[ing] to make findings of fact" so long as the evidence is not "controverted").

§ 42.81(b). "As part of th[e visa application] process, the noncitizen submits written materials and interviews with a [Department of State] consular officer abroad." *Muñoz*, 602 U.S. at 904 (citing 8 U.S.C. §§ 1201(a)(1), 1202)).

At the interview, the consular officer must "determine on the basis of the applicant's representations and the visa application and other relevant documentation" the "applicant's eligibility to receive a visa." 22 C.F.R. § 42.62(b)(1)(ii). Once "a visa application has been properly completed and executed before [the] consular officer" in accordance with the relevant law and regulations, the officer "must issue the visa" or "refuse" it under 8 U.S.C. §§ 1182(a), 1201(g), "or other applicable law." *Id.* § 42.81(a). A refusal under Section 1182(a) is because the noncitizen is "inadmissible" on specified grounds and thus "ineligible to receive [a] visa[]," 8 U.S.C. § 1182(a), while a refusal under Section 1201(g) is because "(1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . under [S]ection 1182 . . . or any other provision of law, (2) the application fails to comply with the provisions of [the relevant law and regulations], or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . . under [S]ection 1182 . . . or any other provision of law," *id.* § 1201(g). "The consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available." 22 C.F.R. § 42.81(b). And "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." *Id.* § 42.81(e).

**B.    Facts and Procedural History**

Nagi, a United States citizen, is married to Al Harbi, a Yemeni national who currently lives in Yemen.  Petition ¶¶ 73-74.  To begin the process for Al Harbi to receive a family-based immigrant visa, Nagi filed a Form I-130 Petition on Al Harbi's behalf, which USCIS approved on June 30, 2016.  *Id.* ¶¶ 73, 75-76; Peterson Decl. ¶ 4.  On or around August 2, 2016, Al Harbi submitted a Form DS-260 immigrant visa application plus supporting documentation.  Petition ¶ 78.  On February 23, 2017, his application was deemed "documentarily qualified" for an interview; Al Harbi was then scheduled to interview with a consular officer at the U.S. Embassy in Cairo, Egypt, on May 23, 2017.[3]  Peterson Decl. ¶¶ 6-7.  At that May 23, 2017 interview, the consular officer in Cairo refused Al Harbi's application under Section 1201(g) and Section 1182(a)(6)(E), for having "at any time knowingly . . . encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law," 8 U.S.C. § 1182(a)(6)(E).  Peterson Decl. ¶ 9.

On March 17, 2019, a consular officer again refused Al Harbi's application, this time under Section 1182(f), which provides that the President of the United States "may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants" whenever he "finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States," 8 U.S.C. § 1182(f).  Peterson Decl. ¶ 10.  This refusal was made in accordance with Presidential Proclamation 9645, *id.*, which

---

[3] Al Harbi's interview did not take place in Yemen because that is a country "in which the United States has no consular representation or in which the political or security situation is tenuous or uncertain enough that the limited consular staff is not authorized to process [family-based immigrant visa] applications," 9 Foreign Affs. Manual § 504.4-8(E)(1)(a), available at https://fam.state.gov/FAM/09FAM/09FAM050404.html.  *See* Petition ¶¶ 42-44.

"suspended" the "entry into the United States of nationals of Yemen as immigrants," Proclamation No. 9645, 82 Fed. Reg. 45161, 45166-67 (Sept. 27, 2017).

On September 17, 2019, a consular officer refused Al Harbi's visa application yet again, this time under Section 1182(a)(6)(C)(i), for "by fraud or willfully misrepresenting a material fact, seek[ing] to procure (or ha[ving] sought to procure or ha[ving] procured) a visa, other documentation, or admission into the United States or other [immigration] benefit," 8 U.S.C. § 1182(a)(6)(C)(i).  Peterson Decl. ¶ 11.  But on October 2, 2020, USCIS granted Al Harbi a waiver of the ineligibilities under Section 1182(a)(6)(C)(i) and Section 1182(a)(6)(E), the grounds for the September 17, 2019 and May 23, 2017 refusals, respectively.  *Id.* ¶ 12.

Notwithstanding that waiver, when Al Harbi appeared for another consular interview at the Cairo Embassy on September 21, 2021, the consular officer found that Al Harbi had not overcome the refusal of his visa application under Section 1201(g), because more security screening was needed.  *Id.* ¶ 13; Petition ¶¶ 79-80.  According to Petitioners, Al Harbi was "required to submit answers to a list of supplemental questions," and, as of the time of the Petition's filing, his application "remain[ed] in an indefinite state of additional 'administrative processing' with no timeline for completion."  Petition ¶¶ 80-86; *see id.* ¶ 5 ("Following the [September 21, 2021] interview, [Al Harbi's] case was placed in administrative processing, where it has remained indefinitely since that time.").

Petitioners initiated this action on March 25, 2025.  Dkt. 1.  On June 27, 2025, this Court ordered Petitioners to file a status letter by July 7, 2025, explaining whether the initial petition had been served on Respondents and addressing the deficiencies in the filing of that petition noted by the Clerk of Court.  Dkt. 6.  On July 7, 2025, Petitioners represented that Respondents had been served but did not address the noted deficiencies.  Dkt. 10.  Rather, Petitioners filed the operative

Petition that same day. Dkt. 8. The Petition alleges that Al Harbi "has yet to receive a final adjudication of his visa application" and thus raises unlawful withholding and unreasonable delay claims under the Mandamus Act and APA. Petition ¶¶ 4, 116-178 (making four claims under those statutes). The Petition accordingly requests an order from the Court under both statutes to "compel[]" Respondents "and those acting under them to perform their duty to adjudicate [Al Harbi's] immigrant visa application . . . within 30 days." *Id.* at 29-30 (prayer for relief); *accord id.* at 1.

Following the Petition's filing, consular staff at the Cairo Embassy emailed Al Harbi on October 23, 2025, requesting that he "provide an updated police certificate, recent personal photos, and an updated Form DS-260, Immigrant Visa Electronic Application." Peterson Decl. ¶ 14. A week later, on October 30, 2025, the staff further requested that Al Harbi complete an updated medical examination. *Id.* ¶ 15. Al Harbi was told that once these items were submitted, he would be scheduled for another appointment at the Embassy where he would re-take his visa application oath. *Id.* ¶ 14. On or before December 16, 2025, the Embassy received the requested materials. *Id.* ¶ 16. But after Al Harbi re-took his visa application oath at the Embassy on January 15, 2026, a consular officer once more refused his application that same day, now under Section 1182(f), in accordance with Presidential Proclamation 10998. *Id.* ¶ 17. That Proclamation, dated December 16, 2025, "fully restrict[s] and limit[s] the entry of [immigrant] nationals" from certain countries, including Yemen. Proclamation No. 10998, 90 Fed. Reg. 59717, 59721-22 (Dec. 19, 2025).

Meanwhile, Respondents had requested and received several extensions to respond to the Petition, and were ultimately ordered to respond by January 28, 2026. Dkts. 12-21. On January 28, 2026, Respondents moved to dismiss the Petition for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), reasoning that the January 15, 2026 refusal of Al Harbi's

visa application in accordance with Presidential Proclamation 10998 rendered the case moot. Dkts. 22, 23 ("Motion"), 24. The next day, this Court ordered Petitioners to "advise the Court" by February 12, 2026 whether the "visa application was denied and, if so, show cause why this case should not be dismissed as moot." Dkt. 25. Petitioners filed their opposition to the motion to dismiss on February 12, 2026. Dkt. 26 ("Opposition").

## II. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Because "[u]nder Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action," a Rule 12(b)(1) motion may be based on mootness. *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (citation modified). A defendant "challenging subject matter jurisdiction" on mootness grounds "may 'make a fact-based Rule 12(b)(1) motion' by proffering evidence beyond the complaint," and "[w]here, as here, the extrinsic evidence is uncontroverted, there is no need for a court to make findings of fact when determining whether it has subject matter jurisdiction." *Srour v. New York City*, No. 23 Civ. 9489 (JPC), 2025 WL 2644222, at *3 (S.D.N.Y. Sept. 15, 2025) (quoting *Carter*, 822 F.3d at 57). A plaintiff must "establish[] by a preponderance of the evidence that subject matter jurisdiction exists" to defeat a Rule 12(b)(1) motion. *Xia v. Bondi*, 137 F.4th 85, 89 (2d Cir. 2025).

## III. Discussion

Respondents argue that Petitioners' "case is moot." Motion at 9-10. Because Article III limits federal courts to the resolution of "actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), the mootness doctrine "ensures that a litigant's interest in

the outcome continues to exist throughout the life of the lawsuit," *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021) (citation modified).  Changed circumstances may cause "a case that presented an actual redressable injury at the time it was filed" to cease involving "such an injury." *Id.* (internal quotation marks omitted).  "When this occurs, the Constitution's case or controversy requirement, U.S. Const. Art. III, § 2, is not satisfied and a federal court lacks subject matter jurisdiction over the action." *N.Y.C. Emps. Ret. Sys. v. Dole Food Co., Inc.*, 969 F.2d 1430, 1433 (2d Cir. 1992).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted).  "Put another way, a case becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *United States v. Ross*, 161 F.4th 100, 112 (2d Cir. 2025) (citation modified); *accord FBI v. Fikre*, 601 U.S. 234, 240 (2024) (explaining that "a federal court must dismiss the case as moot" where the "complaining party manages to secure outside of litigation all the relief he might have won in it").  So "[w]hen a plaintiff asks a court to compel a federal official to act, and the federal official has [since] performed that act, the claim is moot." *Mahon v. Johnson*, 321 F. Supp. 3d 320, 323 (E.D.N.Y. 2018); *see Chen v. Noem*, No. 24-2058-cv, 2025 WL 1466205, at *1-3 (2d Cir. May 22, 2025) (summary order) (finding moot claims brought under the Mandamus Act and the APA seeking a court order directing an agency to adjudicate an unreasonably delayed application when the agency then acted on that application).

Just so here.  Petitioners could not have been clearer that they sought "to compel" Respondents "to adjudicate [Al Harbi's] immigrant visa application." Petition at 1; *accord id.* ¶ 17 ("Plaintiffs now turn to this Court seeking an order to compel [Respondents] and those acting

under them to immediately and forthwith take all appropriate action to fulfill their mandatory, non-discretionary duty to adjudicate [Al Harbi's] application and issue a final decision on their application within a reasonable time."). And the particular relief Petitioners sought was an "order compelling [Respondents] and those acting under them to . . . adjudicate the immigrant visa application of [Al Harbi] within 30 days of the order." *Id.* at 30. Courts in this Circuit have routinely held that "when a plaintiff asks the court to compel" immigration officials "to adjudicate an application that is no longer pending at the time of the court's review, that claim is moot." *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 222 (E.D.N.Y. 2021); *accord Altowaiti v. Cissna*, No. 18 Civ. 508 (ER), 2020 WL 2036703, at *3-4 (S.D.N.Y. Apr. 28, 2020) ("[B]ecause the petitions have inarguably been adjudicated—even if the result of that adjudication was not what Plaintiffs would have preferred—an order directing USCIS to adjudicate the petitions, or even a declaration that such adjudication was not timely, would have little direct impact on Plaintiffs."); *Mahon*, 321 F. Supp. 3d at 323-24 (similar). This case is no different. Petitioners concede that "after" they "initiated this litigation seeking adjudication of the visa application, [Respondents] refused the application pursuant to [8 U.S.C. § 1182(f)] and Presidential Proclamation 10998." Opposition at 3; *see* Peterson Decl. ¶ 17. Indeed, courts across the country have concluded that visa-application denials based on the exact same Presidential Proclamation render similar delayed-adjudication claims moot. *See, e.g.*, *Farhadinia v. U.S. Dep't of State*, No. 4:25-cv-01443-JCB-KNM, 2026 WL 1675185, at *1-2 (E.D. Tex. May 5, 2026), *report and recommendation adopted*, 2026 WL 1670817 (E.D. Tex. June 9, 2026); *Kordi v. Blinken*, No. CV-25-00659-TUC-RM (JR), 2026 WL 1150153, at *1-2 (D. Ariz. Mar. 25, 2026), *report and recommendation adopted*, 2026 WL 1146944 (D. Ariz. Apr. 28, 2026). This Court joins them.

Petitioners "make[] no attempt to argue that any of the exceptions to the mootness doctrine apply here." *Essa v. Slattery*, No. 24 Civ. 3985 (DLI), 2026 WL 875586, at *4 (E.D.N.Y. Mar. 31, 2026); *see Town of Newburgh v. Newburgh EOM LLC*, 151 F.4th 96, 102 (2d Cir. 2025) (discussing the mootness exceptions of voluntary cessation and conduct capable of repetition yet evading review). Instead, Petitioners argue that the "basis for the refusal" of Al Harbi's visa application—under 8 U.S.C. § 1182(f) by way of Presidential Proclamation 10998—is "unlawful." Opposition at 4. Their position, in other words, is that "this case is not moot" because "effective relief remains available," namely "an order compelling *lawful* visa issuance or refusal consistent with statutory authority." *Id.* at 7 (emphasis added). But nowhere in the Petition did Petitioners seek such an order; instead, they merely sought an order "compelling" Respondents "to adjudicate [Al Harbi's] immigrant visa application." Petition at 30. Now that the application has been adjudicated, "the relief sought" in the Petition "is no longer needed, which is the hallmark of a moot case or controversy." *Town of Newburgh*, 151 F.4th at 101 (citation modified). Whether the basis for that adjudication is unlawful goes beyond the scope of the Petition, "and the law is clear that a party may not amend pleadings through a brief." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 170 (2d Cir. 2025) (internal quotation marks omitted).[4]

---

[4] Petitioners also seek declaratory relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202. Petition at 30 (asking the Court to "[d]eclare that the Defendants' delay in adjudicating [Al Harbi's] application for immigrant visa is unreasonable and violates the [Immigration and Nationality Act] and applicable statutes, regulations, agency guidance, and that Plaintiffs are entitled to a prompt adjudication of the immigrant visa application pursuant to the Declaratory Judgement Act[,] 28 U.S.C. § 2201"); *see also id.* ¶ 19 (alleging that "[t]his Court also has authority to grant declaratory relief under 28 U.S.C. [§]§ 2201 and 2202"). But "[t]he DJA is procedural only, and does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012) (citation modified); *accord Springfield Hosp. v. Hofmann*, 488 F. App'x 534, 535 (2d Cir. 2012) (summary order) (explaining that a plaintiff "cannot maintain an action for a declaratory judgment without an underlying federal cause of action"). Thus, any claim under the DJA is dismissed without prejudice as well.

Because the Petition is moot, the Court dismisses Petitioners' claims without prejudice for lack of subject matter jurisdiction. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]hen a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice." (citation modified)). Petitioners have not requested leave to amend the Petition or explained how they could revive an otherwise moot action. *See Essa*, 2026 WL 875586, at *4 (construing a motion for leave to amend "based on post-filing events" as "one to supplement pursuant to Rule 15(d)," although ultimately rejecting that motion "because th[e] action is moot"). So the Court does not *sua sponte* grant leave to amend. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [for leave to amend] that was not made."). This dismissal, of course, is "without prejudice" to Petitioners' "right to file a separate action seeking relief beyond the limited relief sought in the Complaint, to wit, adjudication" of Al Harbi's visa application, although the Court takes no position on the viability of such an action. *Balde v. Nielsen*, No. 18 Civ. 9597 (PAE), 2019 WL 2387794, at *3 (S.D.N.Y. June 6, 2019).

### IV. Conclusion

For the above reasons, the Court grants Respondents' motion to dismiss for lack of subject matter jurisdiction and dismisses the Petition without prejudice. The Clerk of Court is respectfully directed to enter judgment in Respondents' favor and to close this case.

SO ORDERED.

Dated: June 25, 2026
    New York, New York

_____
JOHN P. CRONAN
United States District Judge

11